Brown v. Schimel. Mr. Prigott? Good morning, Your Honors. And please, the Court, I'm Daniel Prigott. I represent Clarence Brown, the petitioner in the Eastern District on the state habeas case. Mr. Brown comes to this Court today asking asking the Court to recognize a right under the Second Amendment of the United States Constitution and relieve him of a conviction in the state of Wisconsin for carrying a concealed weapon. Mr. Brown found himself unwittingly in the middle of a crime scene in October of 2009. He attempted to get some children out of the street and eventually moved over, found them gathered around a gun, took possession of the gun, unloaded it, put it in his waistband, and waited, watching the shooter, to identify him for the police. When he did that, he told the police he had a gun, he was arrested, and tried and given four months in the county jail. This was addressed by the Wisconsin Court of Appeals, and that decision was the subject of the habeas in the Eastern District. The Wisconsin Court of Appeals, I've got, I guess, two points that will simultaneously address the two issues before the Court. The Second Amendment assertion... Has he served his four months? He has not. The Court stayed that pending appeal, and it's still stayed under the authority of the Circuit Court. The Wisconsin Court of Appeals first did not find that Heller applied to Brown's case at all. They distinguished Heller saying that that case covered a much broader restriction than the concealed weapons restriction in Wisconsin, and instead turned to Hamdan and Cole, two 2003 Wisconsin cases from the Wisconsin Supreme Court that they said were binding. They also found in their decision that, really, Brown had no interest to be balanced. The Wisconsin Court of Appeals found that Brown was not in any danger at the time he crept over and took possession of the gun, and they found, well, they offered Brown three alternatives, two of which were illegal, and the last one just incredibly unwise. This is the nature of Brown's Second Amendment challenge. He faults the Wisconsin Court of Appeals for not appreciating the... But how can he establish that what the Wisconsin Court did was contrary to clearly established federal law? The Wisconsin Court overlooks the central nature of the self-defense right. It merely looks at the scope of the law. Do you remember what Heller said about concealed carry in firearms? Heller, interestingly, did not list concealed carry in the list of things it specifically didn't want to prohibit. It listed concealed carry in a recitation of things that had previously passed muster. Right. Yes. So its only mention was that concealed carry laws had been upheld under the Second Amendment. They have. So how could it be clearly established federal law that a state's concealed carry law would violate the Second Amendment? Well, it's clearly established federal law under Heller that a self-defense right is the central component of the Second Amendment. Well, look, that's an interesting interpretation of Heller, but it's not where the Supreme Court went in Heller itself. Could I ask you about the procedural obstacle you face here? Sure. Which is whether the federal as-applied challenge that you're raising here was ever presented to the state courts. The appellate brief makes it, frankly, it looks pretty clear to me that it's a purely state constitutional claim. How were the Wisconsin courts supposed to figure out that he was bringing a federal Second Amendment challenge to the statute as applied to the facts of his case? Well, first of all, in Villanueva v. Anglin, this court a couple of years ago found that Villanueva did not procedurally default because he raised relevant federal cases in his brief to the state courts. Did you do that? I'm looking at the portion of the state court brief on this as-applied challenge, and I didn't see any federal cases. Well, the brief itself is riddled with federal cases. In the argument that was being presented, the as-applied challenge, is there anything? I'm asking you for your best case for fair presentment. The federal cases are cited in the first part of the brief. That's correct. In the reply brief, I think the state says that the federal as-applied issue was brought up in a single sentence. In fact, Brown, in the reply brief, goes through a litany of federal cases from different circuits, including several from the Seventh, and talks about the nature of each quality, the law-abidingness of the defendant, the location where the gun was located, etc. The Wisconsin court itself recognizes that Heller was an as-applied case, and I think addresses as-applied federal relief in the first part of the decision in the state court. As I said before, first of all, they find Heller doesn't apply, and secondly, they find Brown has no interest. He was never at risk. Let me try again. If I'm sitting on the Wisconsin Court of Appeals, reading this brief, Part 2's heading, Wisconsin Statute 941.23 is unconstitutional, as applied to the facts of this case, under Wisconsin Constitution Article 1, Section 25, and State v. Hamden. And I read the brief that cites the Wisconsin Constitution and Hamden. How do I figure out that you're really talking about a Second Amendment claim? Well, Your Honor, I'm not trying to put words in there that aren't there. You're right. Brown's second part, the as-applied section of his brief, didn't bring up federal law. Wisconsin had recently decided an as-applied case, well, in 2003, I suppose is not recent, but they had granted as-applied relief in Hamden, which seemed like the more practical model. Again, though, I'd point out that in Villanueva, Villanueva did not procedurally default, even though he relied strictly on state cases, because this court found four questions to ask. Were relevant federal cases mentioned in the brief? Did the nature of the state case? Elsewhere in the brief, there's an extensive analysis of Heller, which is an as-applied case. I don't think it's fair to say that the Wisconsin court wasn't alerted to the Second Amendment as a potential issue. Yeah, but that's what they did. They referred to Wisconsin law. That's what the, it looks to me like that was really confined to that. And that's what we are reviewing. Well, this is, you know, whatever they clearly set out, I'm not sure that the Second Amendment really overrides them. I'm not sure. I'm not sure either, because it seems to me they base this on the Wisconsin law, Wisconsin Constitution. The, well, first of all, I'd say that the Second Amendment and federal cases were brought up in the brief as a whole, and they were alerted to the fact that Heller exists, and for whatever that's worth, I think the objection is it's perfectly fair. I think the Wisconsin Court of Appeals found Heller didn't apply, so more detailed analysis wouldn't have mattered anyway. Heller was extensively discussed in the brief. And finally, this court and the United States Supreme Court have found that, as applied relief versus a facial challenge, are really a matter of remedy for the court. They don't necessarily have to control the pleadings, and I guess the argument is that it was raised. So we can't rely on briefs. We have to treat any brief that makes a facial challenge as if it's also making an as-applied challenge and vice versa, and it sounds like we have to treat any brief that raises a state constitutional claim as also implicitly asserting any parallel federal claim, and that the state courts must do that as well. Well, I think you have that option. That's not my question. You're saying that the state courts had a duty to read this part of your brief to the Court of Appeals and understand that you really were raising a federal claim. No, I don't think they have a duty to do that. I do think from Villanueva that the question is was the issue sufficiently raised so that the Wisconsin Court could be aware of it. But if you didn't ask the court to rule on a federal constitutional claim, I don't see how you can fault them for not having done so. Just because you have some federal cases and so on, I don't get it. You have to tell a court what, you have to give them the basic elements of your claim. Say, violate the Wisconsin Constitution, violate the federal constitution. If you just say Wisconsin Constitution, they're not going to bother to look at the federal constitution. Well, as I say, the Wisconsin Court has found, I think in Hound Down and Cole, that the Second Amendment, in Hound Down and Cole, they found that the Wisconsin Yes, I know, but when they're asked by the appellant just to consider the Wisconsin Constitution, they're not going to feel they're under a duty also to consider the federal constitution because that's closely related. If there are no more questions, I could reserve a minute for Rebecca. Okay, thank you, Mr. Driegaard. Ms. Schaefer. Good morning. My name is Sarah Schaefer. I'm an assistant attorney general for the state of Wisconsin, and I do represent the respondent in this case, Brad Schimel. Your honors, as you were pointing out, in his appellate brief to the Wisconsin Court of Appeals, his initial brief in chief, when he raised his as-applied claim, he phrased it solely on the issue of whether as-applied it violated the Wisconsin Constitution. Counsel, could you help us understand why this case was prosecuted at all? Because the defendant violated the concealed carry law. And there's no discretion. These are extraordinary circumstances for that kind of a prosecution, aren't they? How so, your honor? A shooting was reported. Do they think he was the shooter? Yes. The state does. Okay. Without being able to prove that. Sure. As the Court of Appeals did, is they took his as-applied challenge under his version of the facts. His version of the facts was, I saw a gun laying there. I picked it up because I did not want the kids to be in his safety to be injured by the gun. And whether that implicates the Second Amendment, his right to self-defense, I think is questionable. Because when there's usually a self-defense argument, you're defending against some unknown third party. He's not claiming that he was trying to protect himself from the shooter, the shooter who got away. But Judge Hamilton was raising a different issue, and that's the exercise of prosecutorial discretion. Apparently, what happened here, the police suspect but cannot prove that he was involved in shenanigans of some sort. But they can't prove that he had this gun under his waistband or something. So they decide to prosecute him for something which in itself is utterly trivial. Because they think there's something worse going on, they can't prove it. Well, the testimony at trial showed that the third party that he thought was the gunman. The officer went to talk to the gunman. The officer actually went to talk to the gunman.  So one of the officers went to talk to the alleged shooter, patted him down, talked to him. He was not armed. Then the other officer starts yelling, gun, gun, gun, when he sees the gun in Clarence Brown's waist. So then the other officer who was with the alleged shooter walks back. And then they pat down and they arrest him. After the arrest, the person who the initial officer had talked to had walked away. Clarence Brown's defense was he saw this gun laying on the ground. Now what is this a defense to in your view? His defense was that... Defense to what? His defense for concealing the weapon was that he was concealing it for the security of himself and for the children. And the Wisconsin Court of Appeals said under the as-applied challenge, you have the burden of showing that your interest in concealing the weapon outweighs the state's interest in enforcing the concealed carry law. And you also have the burden of showing you have no... But what was the state's interest? The state's interest... That is, it's not that he was walking away with a gun. That's true, but he did not alert the... He didn't claim it was his gun. He did not. So all they do is... So for a few minutes, he has a gun in his waistband. Now why would you prosecute a person for having a gun in his waistband for a couple of minutes? Your Honor, they were in a high-crime neighborhood. The police had responded to shots being fired. So they respond to this area. But they are not able to prove that he has done anything wrong except pick up a gun. And conceal it, Your Honor, which is a crime of... And conceal it? What's he supposed to do with it? He could have... Hold it on his... Hold it in his hand? He didn't have to hold it at all. His claim... What should he have done with it? He should have stood over it. He should have what? He could have just stood over it. That was one of the options. I'm sorry, I don't understand. He should have done what? Stood over the gun. He did not have to pick it up. I'm sorry, I don't understand. He should have done what? He said he found the gun on the street. The Court of Appeals, one of their reasonable options is... Look, you answer my question. What should he... Okay, he sees the gun lying there. What should he have done? Left it. If I'm the defendant, and I'm in a high crime area, and I don't know the gun, and I'm claiming it's not my gun, why would I pick it up and conceal it? What if you think there's some danger to the children or something, so you pick it up in order to protect them? The evidence in the record showed that there was no danger. No, that's not my question. What if you pick it up because you're worried that the children will hurt themselves with it? You still get prosecuted? If you conceal it. Would you not... No, you would not. I see. So to protect it from the children. I don't think you have... So you protect it from the children, you pick it up. But you're not allowed to conceal it. You have to hold it. Hold it up so you scare everybody. If the police see a person with a gun in his hand, they'd probably shoot him, right? Doesn't make sense, right? What you're saying does not make the slightest bit of sense. It would be the stupidest thing in the world for him to pick up the gun and hold it in his hand. If he's going to pick it up to protect the children, he has to conceal it. Don't you understand that? I understand. You don't understand that. Ms. Schaffer, let me ask you. At the time of this incident, could you tell us about any differences between Wisconsin and federal constitutional protections for the right to bear arms? That issue wasn't brought up at the Court of Appeals as the as-applied challenge. So the only decision that the Wisconsin Court of Appeals addressed was the Wisconsin Constitution. In substance, was there any difference at the time? Between our version? The wording is different. Yes, it is. Okay, well, I know that. In terms of how the Court has applied it, I haven't been a student of Wisconsin constitutional law in great detail on this. Is there any difference in the substantive protections at that time? Not at the time under the Wisconsin. So why isn't it fair to assume that if you've raised the state issue, you've also raised the identical federal issue? In the as-applied challenge, which, as I pointed out, is obviously phrased in terms of state law. Right. But if state law was identical to federal law, what harm would be done by our considering the federal claim? The harm that would be done is that the Court of Appeals did not have an opportunity to review that issue. They were not presented it by the petitioner, and, therefore, this Court would be basically deciding it for suppression by its own because the Court of Appeals. I understand, but if it's exactly the same question as the one they actually did decide, why should we worry about that? Because the state's court should be allowed to address that issue on the Wisconsin Constitution, and if there wasn't a federal claim on the federal claim, it's for the Wisconsin courts to decide whether the Wisconsin Constitution comports with the federal constitution, whether the Wisconsin case law is in agreement with the federal case law. And in this case, they were not allowed that opportunity. Wasn't that law repealed now? I'm sorry, one more time? The law that he was prosecuted under, wasn't that repealed? It's been amended. It's been amended. That's correct, yes. You can carry one now? Yes. If you get a license, you can carry one now, or you can carry one in your home without a license. I think what we were getting at before as far as concealing the gun. Yes. We have so many cases going on right now. There's somebody in a high-climate area, there's shots fired, and somebody brandishing a gun when the cops show up. He says, this isn't my gun. Right. And so maybe he was concealing it from the cops to protect himself. There's no evidence in the record that that was his reason for concealing. I know, there's probably not, but we're trying to speculate what the heck happened and why we got this far. Well, he stated at trial the reasons for concealing it, and his reasons were for his security and for the children's security. He's protecting himself after he dropped the bullets in the truck. Correct. Right. Correct. The respondent requests that this court, if you have no other further questions for me, that we affirm the district court decision. We rely mainly on our procedural default claim that it was not presented to the Wisconsin courts. Thank you. OK. Thank you, Ms. Schaefer. Mr. Drigo, do you have anything further? Just very briefly and factually, Your Honor, I had not heard the allegation that the state believed Mr. Brown was responsible for the shooting before. In fact, I talked to trial counsel, and they had no idea what was behind the prosecution. I guess I'd point you to a section in the trial transcript just after Brown's testimony where there's a stipulation from Brown and the state that two witnesses, one of the children in the street and his mother, saw Brown pick the gun up out of the street amongst the children. Those witnesses were present to testify, but the judge didn't allow him to testify because she found that the only issue was did he have a concealed weapon. There were no available defenses. This is an unusual case for a Second Amendment litigant. Mr. Brown doesn't come here asking for the right to go prophylactically armed or to increase his arsenal. He's not going to apply for a concealed carry permit. He would just like to also be protected by the Second Amendment should he find himself in the Second Amendment world in a case where his life is in danger. OK, thanks, Ben. You were appointed, were you not? I was appointed. Pardon? I was appointed. Yes, well, we thank you for your efforts on this. All right. Thank you.